Please be seated. Good afternoon everyone. We have one case on calendar this afternoon, Sierra Club v. Donald Trump 19-16102 and I know everyone has been instructed about their amounts of time so we are ready to begin whenever you like. Good afternoon, Your Honor. May it please the Court, James Burnham here on behalf of the United States. The District Court committed three fundamental errors in granting a preliminary injunction below. Each of these errors was clear and each was essential to the erroneous injunction the Court issued. The first was that the Court held that the bedrock zone of interest requirement does not apply at all to the implied cause of action at issue. The second was that... I'm sorry to interrupt you. You're going into what you think are the errors, but what's my standard of review? Well it's abuse of discretion, Your Honor, but a legal error is per se abuse of discretion. So if the Court finds the District Judge committed a legal error, then the preliminary injunction was erroneous. Well isn't a stay pending appeal an extraordinary remedy? It's the flip side of the preliminary injunction, Your Honor, so I would need to demonstrate a likely to suffer an irreparable injury absent a stay, that the balance of the hardships favors the United States, and that the public interest would also favor a stay. Well certainly not a matter of right, even if irreparable injury might otherwise result, is it? Well no, I didn't suggest that it's not a matter of right, no, Your Honor. It's the flip side of the District Court's preliminary injunction standard. And further, if in fact there is an abuse of discretion, we're That's true, Your Honor, but if the District Court committed legal error, that is per se an abuse of discretion, and that determination of legal error would be de novo, Your Honor. So at this point, you're going to suggest these are legal errors? Well I think the District Court committed multiple errors, so I think it committed legal errors in assessing that the plaintiffs were likely to prevail on the merits. I think the District Court also committed legal error in failing to weigh the hardships between the two parties as the Supreme Court requires. Is that legal error, or is that just an abuse of discretion? I think it would be an abuse of discretion in how the court weighed them. I think it was legal error that the District Court failed to weigh them at all. And so Winter v. NRDC tells us that the District Court needs to determine that the plaintiffs have more hardship than the other side. And in this case, the District Court didn't really engage in that analysis at all. Now it was interesting to me, Counselor, that you didn't argue that the plaintiffs lacked standing at all. Is there a reason? So we argued that the plaintiffs have more hardship than the other side. I think the better way of thinking about similar issues is through the zone of interest requirement. Well a zone of interest is not a standing requirement anymore. Well no, I didn't mean to suggest that it is. My point is just that the plaintiffs fall outside the zone of interest of the provision that they're invoking, and so we... So you're on failure to state a claim rather than standing? Well yes, it's part of the merits analysis. Do you believe they have standing? No, I didn't say that, Your Honor. So I'm not conceding that they have standing, but I'm not challenging standing for purposes of the stay motion at this point. So do I have to think about it? Well yes, of course. The Court has an independent obligation to assess Article III jurisdiction, and if Your Honor concludes that there's no standing here, then dismissal of the case would be appropriate, which I think... Can the Department of Defense build this wall in any of the project areas if the 8005 funds are not available? So the money that has been allocated for the projects at issue is all 8005 money? I understand that. Can they build the wall if the 8005 funds are not available? So I don't believe they have a different appropriation available at this time to use for these projects? I think that's what Your Honor is asking. What I'm really talking about is could DHS build this wall without the DOD's support under 284? Not these projects, no. So the reason DOD was sent a request by... The reason I'm asking these questions, this has a lot to do with redressability, does it not? I'm sorry, Your Honor, I don't... When we're talking about standing, we're talking about redressability. Oh, yes, sorry. So yes, it is certainly the case that DOD would have statutory authority to engage in these projects... Well, I'm not talking about the statutory authority. I'm talking could they do it without this 8005 fund? Not the projects that are before the court right now. So the projects that are before the court right now are... So they will receive redress in this particular action if we sustain what the district court did? Yes, if the court agrees that the 8005 money is not available for these projects, there will be no money for the projects, ergo the projects will not go forward. Ergo, I think the answer to your question is yes. So the traditional Article III standing kind of questions, skin in the game, results from the case, those aren't being teed up, haven't been argued by the government, and do not appear to pose a problem now. So again, in the district court, we did argue that the plaintiff lacks... Yes, the answer to your question is yes. Right now, yes, and not to speak as to what, if the case continues, you can argue later, but for our purposes, there does not seem to be a dispute with regard to the plaintiff's being able to come in and raise this claim separate from what I understand to be your zone of interest arguments that speak as well to whether they have a substantive claim. Yes, so I mean, I think the teeth of the zone of interest requirement, of course, is in a case where there is technically Article III standing, but the plaintiff, despite having Article III standing, doesn't fall within the zone of interest of the provision the plaintiff has invoked. So you want to make sure we're kind of past the Article III traditional questions to the zone of interest type questions. Right, yes, Judge Clifton, that's right. So I mean, again, without conceding anything, I think for the court's analysis today, from our perspective, the court doesn't need to address standing, although, of course, it has an independent obligation if the court disagrees, and the court can just move forward with the zone of interest test, which I think is really the key to the whole case. And what is the provision that you think we're looking at for purposes of the zone of interest analysis? It's Section 8005, because that's the statutory provision the plaintiffs have invoked. But if this funding is not authorized by 8005, isn't the problem a constitutional one, not a statutory one? No, Your Honor. So I think if you look at the Supreme Court's decision in Dalton v. Specter, which is at 511 U.S. 462, the court was very clear that in cases like this that are just disputes about whether an executive officer has followed a statute, has acted within the bounds of statutory authority, are not constitutional cases. So if I can just... Well, this isn't quite statutory authority. We're talking a constitutional kind of challenge. It's more like a Youngstown challenge. But it's... Does the President have the authority to do what he did? Does the President here have the authority to do that? No, Your Honor. It's not. So if you look at what Dalton said about Youngstown, Dalton said that Youngstown, quote, involved the conceded absence, the conceded absence of any statutory authority, not a claim that the President acted in excess of such authority. So in that case, President Truman said, I have Article II power to seize the steel mills. That's what the case was about. That's not this case. So what Dalton also says is that, quote, our cases do not support the proclamation... You don't... I mean, you don't get out of it. That just becomes a statutory case, Your Honor. So in that case, the court would decide, does this violate the statute or not? If the plaintiff... If there's a proper plaintiff that can invoke the statute, the court will look at what the statute says and decides whether the executive officer violated its terms or not. But why should we interpret these plaintiffs as invoking this statute rather than invoking the Constitution? Because they don't have a constitutional claim, Your Honor. The claim they have is a claim under Section... Or they purport to have is a claim under Section 8005. It seems like they're also saying that they have a claim that the executive branch is stealing Congress's appropriation authority. Right. But you could... But that's true of every statutory claim against an executive branch official. They all... Every statute has a constitutional underlay. And so if the government prosecutes someone without a criminal statute on point, then that's a violation of bicameralism and presentment because the executive branch doesn't have legal authority to initiate the prosecution. So if you look at Dalton, I mean, really, Dalton could not have been more clear about this. They said, quote, our cases do not support the proposition that every action by the president or by another executive official in excess of his statutory authority is ipso facto in violation of the Constitution. And so I just... I think it's really clear that this is a statutory case. So if we don't have a clear statute that gives them the right to the private cause of action, do they have an APA claim? They could, but the APA, of course, has the zone of interest requirement, too. I understand, but all I'm trying to say is it seems to me that there are two different statutory claims one could bring. One is directly under the statute where one could be gifted the opportunity to bring this as a private cause of the action. The second is that they could bring it under the APA. Right. So, Your Honor, I'm not making an argument right now that they don't have a cause of action. I don't dispute, for purposes of this state argument, that they have a cause of action. What I'm saying is that... Are you saying they have a legal cause of action? No, no. Please. What I'm saying, Your Honor, is that even if you assume they have an implied cause of action, they still have to satisfy the zone of interest requirement, which is part of the merits analysis. Well, I guess my worry about that is this. It seems to me that if this is a constitutional claim, the zone of interest that might be applicable would be different than it would be under Lexmark with a statutory claim or that it would be under the APA or that it would be under an equitable claim. And, therefore, I'm trying to get to understand. Right. So, the zone of interest requirement does not key to the... That's your argument. No, no, Judge, if I could, if I could just answer the question. We'd like you to answer the questions. No, no, please. I'm sorry. The zone of interest requirement keys to the substantive protection that the plaintiff is invoking. I understand. So, the APA and equity jurisdiction are vehicles to get into court, but they don't provide the claim. And the claim would be an 8005 claim. Now, let's say you disagree with us about that and think it's actually a constitutional claim. I think that would be contrary to Dalton. But if you disagree with that, I think it doesn't make a difference because the appropriations clause exists to protect the appropriations process. And here, the plaintiffs are invoking the statutory limits in Section 8005. So, even if the court were to conceive of that as a constitutional claim, the plaintiffs would still have to show that they fall within the limits of the relevant protections they're invoking. Do you think there's anyone who can bring this claim? I think there's an exceedingly small number of people, Your Honor. Who would that be? It's hard for me to say. I think one possibility would be someone who was entitled to the money that was transferred away. So, if there was some contractor or whomever who has an entitlement to some amount of money that DOD used 8005 to transfer away, I think it's conceivable that that person could be within the zone of interest of the provision. But what in 8005 defines anybody as being in the zone of interest? Well, then I think that would just defeat the, I mean, that would read the zone of interest out altogether. Or, what I think the administration might be doing is read 805, 8005 out altogether by basically saying, we can only bring a challenge under 8005, and nobody can bring a challenge under 8005, so we're unchallengeable. Well, no, Your Honor. So, section 8005, just if I could take one step back on what this provision is, this is not part of the U.S. Code. It's not a provision that lasts forever. It's a one-year only provision that Congress includes in DOD's annual budget. And what the provision did, as Congress explained when they enacted it, was give Congress more control over the appropriations process. Let me put this in a different context. Sure. I mean, it seems to me this case can at least as well be characterized as a challenge to something beyond the administration's authority, and the administration points to 8005 as the justification, that is, the act by Congress which appropriates funds and permits the President to do this. So, 8005 isn't the cause of action. It's a defense to the cause of action, which suggests the zone of interest we should be looking at is the initial challenge, not the defense. So, Your Honor, I think the way I would think about it is that plaintiffs have brought an implied action under 8005. I don't think so. I really don't. Okay. So, if the court disagrees with that and thinks that they've brought in a constitutional challenge that's informed by the contours of 8005... Well, 8005 is an act of Congress. If 8005 said the administration can do what it wants to do, case is over. You went on the merits. But the issue is whether 8005 says that. I don't see that as a cause of action. I don't see anything in 8005 that creates a cause of action. It's a defense to a cause of action. And I don't... If that's the case, then how does the zone of interest get involved? Because the plaintiffs in that circumstance would be invoking something antecedent to 8005, which I think would be the appropriations clause. And this Court's cases and the Supreme Court's cases are very clear that the zone of interest requirement applies to constitutional claims, too. Is there any case that says that after Lexmark? Yes, Your Honor. The Ray Charles Foundation v. Robinson, which is a 2015 Ninth Circuit decision, says, and I quote, Lexmark, quote... Oh, wait. Sorry, that's the wrong quote. They do blur together after a while. It came out in Ray Charles. No, no. It's the right case. I just had the wrong quote. It says, the Court there explained that the question is whether the plaintiff is in the, quote, zone protected or regulated by the statute or constitutional guarantee in question. But was the... I mean, is that just dicta? Is there actually a constitutional question in that case? Well, the Court, I mean, the Court's explaining how the zone of interest requirement works. So, no, I don't think it was essential to the holding of Ray Charles. I'm just saying that in the Ninth Circuit decision subsequent to Lexmark... So the Hawaii, Trump v. Hawaii case from the Supreme Court doesn't seem to apply a zone of interest test, does it, to a constitutional challenge? So that's, yes. No, Your Honor. Well, I think, Your Honor, in that case, the plaintiff was clearly within the zone of interest. Of the establishment clause when what they were bringing was a claim about relatives being kept outside the country? How is that in the zone of interest of the establishment clause? As I understood... Under your way of looking at... I'm not expert on that case, but my understanding is that there the claim was that their relatives were being discriminated against on the basis of their religion. And so the Court said that they could bring that claim. But the, well, the injury that the Court talked about was I'm not, I'm being separated from my relatives, which doesn't seem directly to be about the establishment clause. On the basis of religion, though, Your Honor. So I think another way to think about it, one of the cases they talk about... So maybe I'll move you to a different question then. Sure. Does the Sierra Club here have a procedural injury? They participated in the legislative process. They won through the legislative process. Congress agreed with them. Didn't want this funding to be spent on a wall. And now the President is trying to spend it anyway. So why is that not within the zone of interest of the appropriations clause? Because I don't think Congress included Section 8005 to protect people lobbying Congress about a subsequent... This is, 8005 is a defense. So the question is, do you have a cause of action under the appropriations clause? And the zone of interest would seem to include people who try to participate in the normal legislative process. So I don't think so, Your Honor, because I don't think people in that circumstance have a stake in the DOD budget. But maybe if the Court doesn't think, well, I have a stake, you've acknowledged, at least for the purposes of this proceeding, we don't have an Article III standing kind of issue. So if 8005 is viewed as a more substantive merits claim, somehow where plaintiffs fall, if they've got skin in the game, and we seem to have conceded that they do, where does zone of interest pop up? Well, that's the whole point of the zone of interest. When I said a stake, I meant... The point of the zone of interest is who can proceed with a congressionally created cause of action. And if this is not simply a congressionally created cause of action, I'm not sure how it applies. So if I could just make one more point, and then I would like to explain why we satisfy Section 8005. The equity jurisdiction is itself a statutory creation. So we know that from the Supreme Court's decisions in Armstrong and Grupo Mexicano. And so even though it is an equitable claim, it is still a statutory cause of action, and the zone of interest requirement still applies. Lexmark was categorical. It said the zone of interest requirement is a, quote, requirement of general application. But if the Court disagrees... Through statutes, though. I mean, it talks about Congress's intent of who can enforce this statute. Right, but Congress created the equitable cause of action that the plaintiffs are relying on to come into court. If they're under the APA, I don't think there's any question the zone of interest requirement applies. Well, I don't know if Congress created it. Maybe Article III created it. I mean, we inherited it from England, right? No, Your Honor. The first Judiciary Act Congress passed after the Constitution was ratified gave the courts equity jurisdiction. The only other point I would make is equity jurisdiction is based on tradition and history. There is no tradition in history anywhere of people outside the zone of interest of a provision bringing claims. If I could just quickly, because I only have a few minutes left, explain... I'd like to ask you a different question. Of course. So say Congress amended 8005 to say expressly that money could not be transferred to be used for a wall. Right. And then the Department of Defense tried to transfer it anyway to be used for a wall. Would anyone have standing then and be in the zone of interest? I'm not sure whether anyone would have standing. I think in that case, you know, I mean, that would be illegal. And so I don't think that's something that we would do. It's not evident to me who would have standing to challenge it. I'm sorry. It's not standing. Who would be within the zone of interest of that provision? So if no one would be in the zone of interest, then you're saying even when it's something that you would admit is that explicit, it still cannot be enforced? There's just no way to enforce whether the executive is spending money according to Congress's appropriation? No, no. It could be enforced, Your Honor. I mean, for one thing, Congress is taking lots of actions right now to retaliate... This is another one of my questions. So many times in your brief, you say Congress has other tools, but you never say what they are. So can you explain what you think Congress's other tools of enforcing are? Well, they have the appropriations power. So Congress could defund the entire Defense Department if it wanted to and... Sorry. Now or in the next cycle? Well, the next cycle? I mean, Congress... Right. But by then, the wall will be built, right? You say you have an emergency... Your Honor, Congress appropriated the money that we're spending and Congress added 8,005 to the bill in which it did so in September of 2018. So Congress gave DOD this statutory authority. It did so against the backdrop of the political debate last summer and it did so against the backdrop of everything else. And so... Well, if we read 8,005 as not allowing this, then we come back around, right? I mean, it doesn't allow this. So let's put that to the side for a second. But what I'm wondering is if Congress believes that this money is being spent contrary to what Congress authorized, what are the tools that you were referring to in your brief that Congress can use to stop the spending that you're trying to do? Well, I think Congress could pass something today that just says no more spending for the wall. And what if you continue to try to do it? Well, that would be illegal. I mean, I don't... And then who could enforce it? Who could stop you? Well, I mean, I think Congress has a variety of tools to enforce statutes. I think in that circumstance... But wouldn't someone need to come to court? I mean, you've argued in the D.C. District Court that Congress can't come to court. So who goes... Who stops it? So among other things, it's a federal crime under the Anti-Deficiency Act to spend money that has not been properly appropriated. And so in a case like that where there's no colorable legal argument that we have the authority to spend it, every official down the chain spending the money would be committing a crime. Now, you might... Would that kick in now? If the court concludes that 8005 doesn't apply, are you telling me that all the defendants in this case are lined up for criminal prosecution? So it has to be a knowing violation, Your Honor. So in this case, I think because the... I don't know which lawyers, but the lawyers have said this is a lawful application. Somebody must have said it's okay. Right. But so it's a knowing violation. But in the hypothetical that Judge Friedland gave, I think there would be no colorable argument whatsoever that that was something that was lawful. And so all those people... And I can assure you that even though the executive, you know, controls the prosecutors, it's not realistic to think that a bunch of federal officials, public servants, are going to be committing knowing federal crimes. If I could just very quickly on Section 8005... Well, I only have nine seconds left. Would you prefer I save it for rebuttal or... Let me use the nine seconds if I pose something to both of you, and I don't expect an answer now. A lot of issues are coming up. We're throwing things at you. We issued an order and so forth. I'd ask both sides to consider and give us a response as to whether you think there are issues for which we should receive supplemental briefing. We don't want to take a lot of additional time, but we have been hitting upon a lot of things quickly. So when you come back, we'd like to hear your thoughts on that, and we'll be interested in hearing the thoughts from the plaintiffs as well. Thank you, Your Honor. Good afternoon, Your Honor. Troy Ledeen for Plaintiff's Sierra Club and Southern Border Communities Coalition. Your Honor, if what the government says sounds extreme, it's because it's an extreme position. The government is saying basically that the only check on their spending of taxpayer funds is whether a DOJ prosecutor is going to turn around and then say no one can... I know that that's what the government has been saying. The government has suggested that, like the judge did in the House of Representatives' first mention, they said that Congress can do several things. It can veto what they do, and then it can override the president's veto. They can amend the appropriation laws to expressly restrict the transfer of the spending of the  If they don't do it, then there's all kinds of things that can happen. It can expressly exercise its discretion and expand the opportunity for the recovery by a private party harmed by the administration's activities. Why aren't these things that are alternative to a constitutional claim? Well, thank you, Judge Smith. I think, first of all, when the remedy is Congress can pass a new law, that hardly seems to be the remedy for an existing statutory violation. So here's what happened. We had an appropriations process in which Congress sat, considered whether a wall was necessary to combat drug trafficking and asserted migration issues, decided not to build it, passed a law, which the president signed. If the president then turns around and violates the law, the answer is not, well, Congress should just get him to sign something else, or alternatively have to override a presidential veto in order to get their original law enforced. That's simply not how our system works. When you have the executive acting lawlessly, the presumptions are all exactly to the opposite. The presumption... Well, but the problem comes with that in that we're really talking in the macro or in the micro. Do you agree that the DHS could legally build a wall in any of the three project areas under 102? No, Your Honor. We don't agree with that because Congress specifically restricted fiscal year 2019 funding to East Texas. Every one of these wall sections is outside of East Texas, and the whole point of Congress's control of the purse is not just that it gets to give away taxpayer money, but it gets to attach strings to that money, and it gets to say, what is the priority? How much will be spent? Where will it be spent? And the executive is supposed to obey those restrictions. And when the executive steps out of those restrictions, people who are harmed by that come to court. Well, so at that point, given that there was $2,515,887,000 allocated for procurement, construction, and improvements, and of those funds relevant here, there's $145,656,000 which were not allocated to anything. Can the DHS use that money to build these borders, build these barriers? Again, no, Your Honor, and the reason is because of the bedrock appropriations principles that Congress legislates against. And so this was briefly... Just a minute. What bedrock principle? Well, Your Honor, the really key one, I think, to focus on... Where do I find this key bedrock principle? You can find it discussed in Nevada v. Department of Energy, which is cited in our brief. But really where you can find it is in hundreds of years' worth of comptroller general decisions. Because that is not binding on this court, but both this court and others have constantly recognized that the best way to understand, and the GAO has an expert assessment of the way in which Congress appropriates funds and the executive is permitted to spend them. So there is a GAO red book that I think the defendants cite as well. But basically, when you want to look at permissible expenditure of taxpayer money, you look to the hundreds of years of law that say that when Congress sets a specific appropriation level for an item or a project or an activity, that is all that Congress intends for that activity to get. We know that's not necessarily an immovable limit, because the whole point of some of the National Emergency Authority and 8005 is to recognize that sometimes circumstances arise that had not been anticipated. And so Congress has given the administration authority to do some moving around, albeit there are conditions attached to it. But I'm not sure it's as simple as being able to say, you know, Congress didn't vote this money, so that's the end of the story. Your Honor, I would certainly agree that it's not always a very simple question. Here, we actually believe it is a very simple question, because rarely do you have such a public and just, I mean, we had the longest government shutdown in our nation's history, specifically over the government, going back and forth about the wall. As a government employee, I'm only too well aware. Absolutely, Your Honor. We're absolutely aware about the shutdown, but what we're not aware of is whether Congress actually said any place that the DOD could not transfer these funds to Section 284. So I think, again, the background principle is the executive can't spend a penny unless Congress authorizes it. Well, I understand that. So what happens is the executive has to identify an authority that lets it aggrandize a particular pot of money. And it did, 8005. I mean, it did and it didn't, Your Honor, because if it identified 8005, but it doesn't actually meet at all with the terms of 8005, then it didn't identify such a fund. And so in 8005, Congress told the Department of Defense, we're not giving you authority to just freely redo your budget. It's not to say that Congress couldn't do that. If they wanted to, they could have passed... But Congress didn't do anything with the 8005 in any of these appropriations. It wasn't even in front of them. Congress didn't say you can't move money out of 8005. All Congress said is under another budget, DHS's budget, you can only have so much money. Well, what Congress did, and the reason we're even talking about 8005, and I just want to Our case involves many more questions than 8005. 8005 is one piece of a whole. But that's all that's in front of us, right? It's all that's in front of you, Your Honor, because the district court found that it was so manifestly unauthorized by 8005 that it didn't need to, although it suggested problems with the other authorities. I understand. So then we can get into 2808 and all of those others. But the problem is I've only got 8002, 8005 in front of me. And what I've got is Congress never saying you cannot transfer funds out of 8005 for this. Your Honor, with respect, I would disagree because 8005 said Where did they say that? When they wrote in 8005, Your Honor, that the DOD can only transfer funds when an item has not been denied by Congress and when it is based on an unforeseen Well, but just the minute not denied by Congress is the thing we're really talking about here. You're saying that just an overall, we're not allowing you to do this under the DHS budget, that that means you cannot transfer funds out of the military budget. Well, Your Honor, we're bound by the statutory language Congress chose. I am too, but I'm trying to figure out why it's a denial. I think you are starting to talk about unforeseen. Well, we can certainly, I mean, the unforeseen I think is equally flawed, as is military requirement because what we're talking about here is simply handing $2.5 billion to DHS. Has anybody ever defined higher priority items? I'm not aware of that, Your Honor, but certainly the word denied Okay, if nobody's ever defined higher priority items, at that point we're really trying to determine whether these are higher priority items. Nobody's ever defined them before. Do I owe any deference to the agency as to what that is? Your Honor, maybe, but what I would say is the higher priority... Well, I'm just trying to say if I owe some deference to the agency, which I really think this is an APA claim, but if I owe some deference to the agency, and nobody's giving them that deference in making that determination, then how in heaven's name can I say that what happened here was a violation of anything? Well, quite simply, Your Honor, because no part of the district court's decision turns on the words higher priority. It turns on denied, which manifestly is discomfort. Well, but the denied is a part of the higher priority. It's a higher priority items and they have to meet three categories. And so, therefore, what one's doing is one's trying to think what's a higher priority and one's determining what that higher priority is by looking at the statutory language under the higher priority. And again, it seems to me that I'm second-guessing the agency charged to determine what is best for the national interest. Your Honor, again, if we were challenging higher priority, that might have some teeth to it, but we're talking about denied. What does the language you have in this statute modify? It modifies items of higher priority. It says for no event for an item that has been denied by Congress. Not higher priority, not lower priority, an item that has been denied. And this court is manifestly capable of interpreting the word denied. I think the government's idea is, again, untethered to the statutory language. The statutory language doesn't say denied to the Department of Defense as regarding a specific budget line. It says item denied. Well, let me go on further. Who determines whether a particular circumstance or requirement is actually unforeseen? Your Honor, again, this court determines it because the case... Why? Why is it that I shouldn't give deference to the agency? Your Honor, you can give some deference to the agency for unforeseen, but you also have a plain record here in which the administration presents a budget request one year before invoking Section 8005 saying a wall is needed to combat the scourge of drugs coming through the southern border. Congress considered that, denied it, and then the agency said, well, actually what was unforeseen is that you would deny it. And so this court is called upon to say, did Congress plausibly, when trying to restrict the agency... That's very good if you put the whole question in your vernacular. If, in fact, one is suggesting that the DHS budget is the budget and that the military budget is a part of the whole and so therefore the military budget can't be switched in order to help 284 simply because the DHS budget is the way it was, then one can go with where you're going. But if, in fact, I suggest that each budget is different and that nobody suggested that the military should not be able to transfer the funds in this particular account around in their own budget, then there's no violation and there's no problem and it isn't unforeseen. Your Honor, if you want to introduce into the statute the words denied to DOD, that would be an amendment of the statute. What you're introducing into the statute is that it's denied to DHS. We just say denied because, in our view, Congress denied it. But your arguments all go to the DHS denial. It has nothing to do with the denial of the military. That's why I'm trying to question you about this. I hear that, Your Honor, and I apologize if my answer is unsatisfying. But again, just looking to the statutory text, the statute says denied. The government makes a request to Congress. The request is denied. That, to us, is what the statute says. The government has not pointed to any language in the statute that says denied to a particular agency, denied as to a subcomponent of the wall, unforeseen by the agency that Congress would, in fact, deny funds to another agency. These are all sort of glosses that they're adding in order to narrow the statute. I think what's incumbent in this Court's analysis is to say, what was Congress trying to do? Because both sides agree, Congress was trying to limit the Defense Department from messing around with Congress's appropriations decisions. What's happening here is, manifestly, I guess I never find that in any one of the statutes passed, any of the appropriations done. Nothing about what can the Defense Department do to mess around. Well, I think specifically the language the government quotes is Congress did this so as to enforce the limitations, its power to limit the Defense Department's ability to re-add to the budget things that Congress had denied. If I accept the government's interpretation of Section 8005 as correct, aren't you asking me to decide a political question? I don't believe so, Your Honor. Why? Well, I think both this Court... Wouldn't you be asking me to supplant a policy decision of the political branches with the Court's own unmoored determination, which is what, zivoscopy? I'm from Idaho, so I can't say that word. That's what zivos... Yes, that's what it says. If I'm going to use my policy decision to supplant the policy decision of the political branches, it's a political question. Your Honor, if we were asking you for a policy decision, I would agree with you, but I think if I understood your question correctly, you were asking if you accept the government's view of Section 8005, which is to say you accept that they're transferring funds for something that was not denied by Congress and was unforeseen. Right. At that point, we wouldn't be asking you, well, would you nonetheless reassess the policy for us? At that point, what you would have done was reach the merits, because, of course, the political question is antecedent to the merits. It's a question about this Court's jurisdiction. I don't think anyone... And I think if there were a chance that this Court didn't have jurisdiction over the question, the government would have raised it and would have taken you up on your offer and said, you know, this Court doesn't have jurisdiction. I think if at the end of the day you agree with the government on 8005, honestly, this is the beginning of the story of the amount of unlawful conduct that's happening here. So then we'd move on to Section 284, for example, and the way in which Congress did not delegate to the Secretary of Defense an independent authority to spend $2.5 billion on a wall. We're not... We don't have that in front of us. You certainly don't, Your Honor, though, of course, you can affirm the injunction based on any grounds supported by the record. I do think, once again, Judge Clifton, as you asked about whether supplementary briefing would be appropriate, I do think to the extent that Your Honors are persuaded by the government's 8005 argument, given how many other violations were placed at issue in the case and given the district court's strong suggestion that some of those were viable, I think it would be appropriate for this court to consider them because the government's alternative is this. You put in an emergency stay right now, they obligate the funds, at which point this court loses any jurisdiction over them, and they just start building the wall and causing irreparable harm. Given how many viable issues are in the case... Why would we lose jurisdiction? Over the funds? Well, you wouldn't lose jurisdiction over the claims of construction, but you'd never be able to get those funds back to the Treasury, and so the way... But your claim isn't driven by what Mr. Burnham suggested was the alternative. I'd get the money otherwise, and so your claim is based on the construction part, and that would still be in front of us. I'm not sure why we'd lose jurisdiction over that. Your Honor, and I apologize. I think I misspoke. I was not suggesting that you lose jurisdiction over the case or our injuries. What I mean is you lose jurisdiction over a very key part of the public interest in this case, and so as you see in the brief submitted by Congress, as I think perhaps some of the other amicus briefs talk about, one of the issues, and again, it's not our injury, it's an injury to all taxpayers, is the fact that... I don't know you want to use taxpayer because taxpayer spending is... It's not our injury, Your Honor. We're not in court about this. What I'm saying is there's a public interest... Don't you have a process injury based on your participation in the legislative process that would be like an injury from the violation of the Appropriations Clause? Yeah, Your Honor, we think its roots would be in the Appropriations Clause. We think our participation in the legislative process is ample demonstration of the fact that we are natural challengers of the executive disregarding the appropriations process. So that aspect of your injury might not be before us anymore once the money is gone. Is that what you're just getting at? No, Your Honor, we think that aspect of our injury would remain because, again, the Appropriations Clause protects against also the unlawful spending of the money and so our injury would be nonetheless when that money was spent to construct the wall. I've sort of led us down the wrong path. I'll close that door because your time is limited. Let me pose something else to you, not unrelated. I've described 8005 as a defense. It's not a new provision. You've talked about how Congress in this year limited or declined to grant requests to spend or appropriate money for spending more directly. But 8005 sits there as it has apparently been sitting there for years and is included in the Appropriations Act even as there is concern and as the President is saying things that suggest that he's going to do what he wants to do anyway. It's sort of like the National Emergency Act was passed at a time when Congress thought it could pull back the declaration, only it turns out the Supreme Court later said, ah, no legislative veto and Congress amended the National Emergency Act in 8005 even in the context of knowing that the administration may be inclined to pull forward. So I sit here and I'm not sure I look at 8005 and understand how there are limitations that you think Congress put in place when in fact it's also enacting 8005. So I think there's two pieces of the answer to the question, Your Honor. First is, and the government makes a lot of the fact that no one has ever brought an 8005 claim before. That's because this is the first time in history where the government has submitted its 8005 reprogramming request to the committees, as 8005 says it should, and said, we will disregard your judgment about this. This is the so-called gentleman's agreement. Exactly. And we're not arguing that there's an enforceable committee requirement. But in every previous time... And Congress could have written in something. And it didn't. And it suggests again how extraordinary what's happening is here. So the Congress said, you can't use it if we deny you funds for the item. And for 30 years, DOD has obeyed. Now DOD said, we recognize, and former defendant Shanahan testified about this to Congress, that they talked about it internally and they knew that this would blow up the authority. But when Congress enacted 8005 in the most recent appropriations bill, DOD had never done this before. No one ever thought that DOD would really try to make a go of doing something in the teeth of the committee. You had public statements from the administration suggesting that we're going to get it done one way or the other. So the opportunity was there, and Congress did not exercise the opportunity. So first of all, again, Your Honor, I think anticipating illegality on the part of the executive branch is not really... So I would have thought your answer would be they looked at the statute, they thought unforeseen and denied covered the situation. That's exactly right, Your Honor. You said it better than I did. But what I meant is, Congress did not foresee illegality in the sense that Congress did not foresee that they would use 8005 if 8005 manifestly did not authorize this. And 8005 doesn't authorize it because it was denied and it's not unforeseen. And I think the fact that we can talk about it being foreseen by Congress when it enacted the 8005, and yet at the same time somehow not foreseen by the defendants that they would use it in this way, is perverse. The idea that Congress foresaw it but the defendants couldn't, I mean, is a very strange reading of what unforeseen means. Let me change a little bit. If I don't find that you have a legal claim, do you have an APA claim? Your Honor, you can certainly construe these claims as APA claims if that is... In fact, you argued that at the district court, did you not? Yes, Your Honor. We think the district court got it right. We think these are classic ultra-virus claims. I understand, but in order to get to ultra-virus and constitutional claims, one's got to decide that the APA is not available, doesn't one? That's not the case, in fact, Your Honor. Why would one jump directly to the constitutional claim if one's just talking about an APA claim? There's a few reasons, Your Honor. People bring APA claims because they can get a whole expanded scope of review under the APA. You can get arbitrary... It's not what the review is. It's whether you can bring the claim. Why would we give you a constitutional claim and jump to analyzing the Constitution when we can just do it under the APA and it'd be easy done? I think just one clarifying point is we're not saying infer a new cause of action under the Constitution. The equitable remedy... Whether you're inferring a new or whether you're just bringing back an old, to get to the constitutional claim you've got to have no other claim. And I don't find why this won't be an APA claim. Especially when you allege it to the district court. Why do we have to jump to constitutional claim to get there? Your Honor, I don't think you have to jump to constitutional claim. The way in which Altraverse is described in Dames and Moore most recently, but in other cases, in Youngstown, for example, is the executive doesn't have authority to act where it lacks statutory and constitutional authority. Just a minute. If you're going to go there, what are you going to respond to the government when they start talking about the case of Dalton versus Specter? I'm glad you asked, Your Honor. Because Dalton is completely an opposite. And first of all, the government suggests here a reading of Dalton that basically says Dalton eliminated Altraverse review. Dalton said that whenever the government points to any statute, that's the end of the inquiry. That's exactly what the government is arguing. The government is arguing if the only thing you've got is that the government didn't follow the statute, then we're not going to be talking about Altraverse. We're not going to be talking about constitutional claims. We're going to be talking about that. And that's what Dalton says. Well, Your Honor, we'd be happy to provide supplemental briefing on Dalton. But in Dalton, what the government, what the plaintiff in Dalton said was that if the statute, we argue a clear, in Dalton, the plaintiff said, we argue a clear statutory claim. We say the statute doesn't authorize the government's conduct. And because we say that, we ipso facto have a separation of powers claim. And what the government... Wait a minute. That's exactly what Dalton was trying to eliminate. Dalton was saying, we don't need to get to the constitutional claim. We've got other kinds of claims that can be brought, and that's what ought to be brought. And that's what Dalton says. And that's why I'm saying if you don't have a statutory claim, maybe you've got an APA claim. Maybe we ought to review this as an APA claim. Since you argued it in the district court, I'm wondering why you didn't argue it here. We put the identical footnote in our brief here, Your Honor. We're not arguing that this can't be considered as an APA claim. And if it were an APA claim, we'd give a lot of deference to the agency, wouldn't we? You would give appropriate deference to the agency, absolutely. How much deference would we give? Well, when you're talking about the agency violating the clear terms of the statute... Now, just a minute. We're talking about the interpretation of the statute that we have in front of us. We're talking about how that interpretation is to be done. We're going to give it some deference. I don't know whether we're going to get to Chevron, but we might give it something less. I mean, I'm just trying to say, did the district court ever think about all of that? Did the district court think about the appropriate level of deference to supply... Again, I think, Your Honor... So, in that instance, if they didn't, don't I need to send that back and let them think about that, since this would be an APA claim? No, Your Honor, because the district court found the government's construction of that statute implausible. I understand that, but that's because the district court did not give any deference to the agency who interpreted that statute and acted there under. Your Honor, the deference is given to a reasonable interpretation of the statute. The district court found it unreasonable that Congress would have intended its own actions to be unforeseen military requirements, and that Congress would have intended its own denial of funds to the administration to be cabined by agency when evaluating the government's unified, multi-agency effort to circumvent a funding restriction. We agree with that conclusion. We don't think it requires a reassessment of whether that is a reasonable interpretation. We submit that it is not one. But, if you'll permit me, and I realize I'm over, I just want to, if I may, really clearly lay out what our position is on APA versus ultra vires. Again, we don't think, and we're happy to brief more on Dalton, that the court undid hundreds of years of traditional equitable ultra vires review. We're not asking for this court to jump to the constitutional question. What we're saying is the government is spending money that it's not authorized to spend. The government, as this court has at least suggested during the argument, is raising 8,005 as a defense. We're not saying we have an APA cause of action that arises under 8,005. All that said, as we've told both the district court and this court, if you disagree with us on that, there is still a presumption that the executive's actions are reviewable by a court, and Congress wanted its prohibitions reviewed. And the way in which it did that, when it's not reviewable, it's not a case of a  an APA cause of action. And if we are, in your judgment, within the APA and an APA cause of action, the government has told you that we're not within the zone of interest. And certainly I recognize my time has run. If this is an ultra vires claim, do we think of that as a statutory claim or as a constitutional claim? If I answer yes, will you be mad? We won't. We've heard worse answers. That's for sure. Yes. I'm sorry, but I just think that that is the case. So if you look at the classic ultra vires cases, if you look at, again, Dames and Moore would be the most recent Supreme Court one, but before that at Youngstown, they look together. They don't say, does this arise under, say, your Fifth Amendment under the Constitution, or does Youngstown arise under the president's war powers? That's not how it's looked at. What the plaintiff comes in on an ultra vires claim and says, I'm being wronged by the executive in a way that the executive has no power to wrong me. And the court says, well, it's a simple question. Does the executive have the power or not? That's the essence of an ultra vires claim. There are also constitutional claims, and we did raise those as well. So we did say they are violating the appropriations clause, and that means the court would need to say, can you bring an appropriations clause claim? We view that as a separate type of claim than the ultra vires claim, and that's, again, why the district court was correct in not reaching the appropriations clause claim even though it was looking at ultra vires. Because what it said was, plaintiffs have said they have no power to build the wall with these funds they're taking from military personnel accounts. I'm not going to reach the question of whether what they're doing violates the appropriations clause or the presentment clause, because it's so clear that the statute doesn't authorize that. But once the statute doesn't authorize it, then the executive is acting without constitutional authority, because they're either in the appropriations realm or the presentment realm or some constitutional realm, right? So I'm not sure. I just have trouble understanding the difference between an ultra vires claim at that point and an appropriations clause claim at that point. Yeah. I think maybe the cleanest illustration is Armstrong. So Armstrong talks about a violation of the Medicaid Act, and the Supreme Court walks through three different possibilities for how that claim can be understood. Option one... The first and the third, and I just don't understand that at all. Yeah, that's fair. And I think there are many ways in which they merge, ultimately. And here, too, because we're talking about appropriations, which is such a unique context, there's a way in which the statute and the clause sort of collapse into each other, because there's no freestanding authority the executive has except for what's been appropriated. So the statute and the appropriations clause do merge, and I recognize also the traditional sort of equitable remedy. It's difficult to disentangle. Again, to me, what the court does there is it just marches through, and it says, option one, it's a constitutional cause of action under the supremacy clause. And the court says no. Unlike many other constitutional provisions, there actually is no implied cause of action to enjoin under the supremacy clause. I think maybe I better cut you off, because you're way over your time, and we've read Armstrong. Thank you. I'm going to give you more time, because I gave him more time, but first we'll hear from the states. Thank you very much. Good afternoon, your honors. May it please the court. My name is Lee Sherman. I represent the state of California, and I'm speaking today on behalf of the other amici states. The states have a unique interest in these proceedings, not least of which because New Mexico's relief presently is dependent upon the relief that the district court granted to the organizational plaintiffs on a motion for preliminary injunction. Interesting that you should make that argument, because you really only wanted amicus. So we really can't look at what interest you might have. We can only look at the interest of the plaintiffs in front of us, can we? We would disagree with that, your honor. How do we, if you're only filing an amicus brief, take into consideration your particular interest? Sure, your honor. So under the standard for whether to grant a pending appeal, one of the factors is other parties interested in the proceeding were not. So we're down to the third factor? Well, it is one of the four. We think that one of the strongest factors is the likelihood of success. Well, I understand, but we can't weigh your interest in the likelihood of success. We can only weigh it in the third factor. Is that what you're telling us? Yes, your honor. With respect to that factor, it is appropriate, and the court should consider the states are in the underlying proceeding. And another reason, and New Mexico's interest would be harmed undeniably if the state requests were granted. In addition to which, the equitable principles point towards denying the United States motion in light of the expedited briefing schedule that is currently in place in the district court in which the parties are briefing as we speak the motion for summary judgment that is going to be decided within the next 10 days. But the reality is that seeking review from this court is likely to, I mean, I expect this court's going to receive an application from one or more parties, and so what we really tried to do is recognize the fact that the clock is ticking to expedite things. I don't fault the states for electing to hold back and appear only as amici, but the fact that there's a whole array of other issues out there that might get raised, I don't think that's something that should deter us from doing what we think we have to do in the case in front of us. Well, sure, Your Honor. The point being is that there's going to be a more fulsome record that's going to be coming, presumably if someone appeals, that record will be coming to the court shortly. So to grant the extraordinary remedy The clock that has been offered up in the motion for stay suggests that, okay, maybe the district court comes out with a decision, you're talking about briefing being completed, is there a hearing date set yet? The court, the district court said that he will grant he will say if a hearing is necessary, but currently there's no hearing contemplated. So what's the deadline for the last papers to be submitted? The plaintiffs will be submitting their reply brief on June 24th, and there's going to end, there's a decision that's anticipated before July 1st because the United States representations that they would plan So if you look at this case, you're talking about at least another month before this court weighs in on whatever applications are filed to us on an emergency basis following the district court's decision that she sued July 1st for convenience. It's a Monday, it's an easy date. So we're probably talking about like the end of July or beginning of August at best for review, and according to what the administration has told us, that's going to be too late. So, I mean, I really have difficulty to the extent that you're trying to suggest to us, just sit back, let the district court proceed, nothing to see here. I can't get on to that train. It seems to me that this is as good a time as any to take up the issues that have been presented. Understood, Your Honor. So I would like to then get to the merits then. And we agree, of course, with the district court that the conditions under 8005 were not satisfied. However, the district court also said that if you were to adopt a sentence interpretation, there would be a likely separation of powers violation. And that is something that is for the province of this court to decide. There's no deference to the agency to determine whether it is acting in accordance with the Constitution. If, in fact, it's an APA claim. Why? Well, first of all... I mean, my problem is I don't find any statutory claim here at all. There was no right given to anybody to bring some action as it relates to this particular statute. So if you're going to come in to me at all, I'm going to look for whatever else you've got to come with. That's why I came with the APA claim. And frankly, you suggested it in your briefing. And that's why I seized upon it. And so I'm saying to you, why is this not an APA claim? Well, we think that it's appropriate to look at this either as ultraviarious or as an APA claim. If it's an APA claim, why is it ultraviarious at all? Why do we have to get to ultraviarious? Here's an alternate action. We don't have to get to that. Sure. So under the APA, there are two different provisions under 5 U.S.C. 706 where this could be brought. One is if the agency acted in excess of its statutory authority. With respect, first to that, Chevron deference, the United States is not brought up and we would Well, we haven't said anything about Chevron deference or not. Sure. That's why he's asking you if you want to do more briefing. Sure. But the agency exceeded its authority in transferring the money or the agency acted arbitrarily and capriciously in doing so. That's what you're going to talk about. And it seems to me that in both of those instances, if I give any deference at all based on, well, I can even do an hour, but I don't think that'll be appropriate or I can move one up or I can go clear to Chevron. It seems to me nobody's giving any deference in this particular situation. Well, there's one provision of the APA that we would point out that you didn't mention. That is that the agency can't act contrary to the Constitution. And that is a part of the APA. Isn't that again something that the agency gets a first right at? And isn't that again something that I have to give them some deference as to whether it is a part of the Constitution? We disagree with that, Your Honor. I understand. That the province of the court is to decide constitutional questions. The agency has no expertise in whether their interpretation is consistent with the Constitution. And is that because Chevron is about statutes that the agency is implementing and you're saying this constitutional provision is really about the Constitution? Is there a case that says that? We would be happy to provide supplemental briefing on that case law to that point that where we're talking about if there is deference, and we're not saying that there is, particularly because there's no rules making authority that the statutes provide, but there is deference, that would be as to what the statute says, but it would not be as to what... But if you're relying on this provision of the APA about agencies not violating the Constitution, is that what you're saying? You're saying that that provision doesn't trigger Chevron? Well, it wouldn't trigger any deference. We're not talking Chevron necessarily. Yeah, and our position would be that we're at Chevron sub-zero with respect to what deference even on the statutory question. Well, I'll be fair. What these words mean in 8005 is certainly ambiguous. Well, regardless of whether it's ambiguous... And if ambiguous, then at that point I've either got to give some deference to the agency in making that determination or I've got to make that and the first part of the whole is what I can do. That's why I'm asking you the questions. Sure. Well, first of all, again, we would say that if there is any deference, we're at Chevron sub-zero because there's no rulemaking authority, but even in addition to that, ambiguous terms need to be read to avoid violating the Constitution. Do you think these terms are ambiguous? Well, we don't. The states don't. Just responding to Judge Smith's question. With my hypothetical. Sure. But also going to the constitutional questions really quickly, we want to underscore that an implicit limitation set by Congress is sufficient to prevent the administration from acting beyond that and that in the United States being the column where Congress has addressed the subject matter and imposed conditions on when the agency can expend funds, the clear implication is that when the conditions are not satisfied, then the agency cannot expend funds. And that goes to several of the constitutional violations that would occur if the court were to give any credence to defendant's interpretation of 8005. Let me look at the language of 8005. Who is it you think is supposed to make the judgment as to whether I'll actually read it. What's the higher priority item? Well, that is not a provision that has come up in the briefing. Not the question I posed. Sure. Whose judgment is it as to what's the higher priority? I mean, Congress has written a statute that doesn't clearly assign to anyone whose judgment applies. So we have higher priority item, which kind of screams out for a policy or discretionary or some kind of substantive expertise judgment. So who's supposed to decide if it's a higher priority? Sure. I would do a better job answering your question. In that instance, the DOD would be the DOD's judgment to decide that. However, the DOD cannot identify a higher priority item even with the first of all, the DOD would have to satisfy the other conditions of 8005. And also the DOD would have to satisfy the constitutional requirements, which is not to act in contrast to Congress's judgment. Everybody else has had to work overtime. I'm sure the state of California will pay extra for a couple of minutes. Well, we won't do that, but I'm happy to pro bono. We're not getting paid for a longer argument? I'm shocked. So you tell me, I mean, this sounds like DOD expertise in terms of higher priority, and that sort of gets to my concern, because somebody's supposed to make that judgment. Now, that's not what you have based the current challenge on. But I look at the statute, which has been there not part of the code, but reenacted year after year for a long time, and what do we do with the fact that Congress is not elected to specify who makes the call? Well, some of the other conditions we would submit are different than as far as whose judgment it is than higher priority. And I'll let you get to that, but I mean, I picked that one out because that one, the natural instinct is to give the answer you just gave, which is that sounds like a DOD-type decision. That's where you would start. And so we've got this one provision within an Annual Appropriations Act. It's hard to start parsing and know where does the court show up or whose judgment we're supposed to be evaluating. Why is it that the rest of that sentence, which moves on to unforeseen military requirements or where the request has been denied by Congress, what means, what tells us that that's a court-type question? Well, unforeseen, we would submit that the facts show that this is certainly unforeseen. Just a minute. Answer his question, because it's the best one. It's not what your argument is. Who says that the DOD is not to determine that? That's his question. And that's the question which I think is most important, especially if it's an APA case. Answer his question. I'm not going to ask it. I'm glad he started. And I'm sure the state of California will get what it's paying for in the form of the answer. The DOD can identify unforeseen military projects or unforeseen military requirements. That one sounds sort of military, too, so it's the third one. So why should we treat the third one differently and say, but DOD isn't the first place to turn to for the third of the three requirements? Well, the third requirement is that the item cannot be an item that is denied by Congress. And DOD has no expertise in that issue whatsoever. And again, that needs to be subject to the constitutional limitation. But just a minute. You say that, but all of that relates to the higher priority items. And DOD is the one who's determining what the higher priority items are based on these considerations thereafter. So it seems to me that that again is a DOD decision because it relates directly to the higher priority items. That's why I'm worried about the difference here and I just keep asking you about that. Sure. Well, higher priority... These are separate conditions. No, they're not. This says higher priority items based. In other words, this is separate. It's what is the higher priority items based on the unforeseen military requirements based on the fact that in no case the funds have been denied by Congress. Based. That's how you determine what the higher priority items are. That DOD will make the determination. That higher priority... So higher priority items, Your Honor, based on the fact that these things must, these conditions must be satisfied. But they're the ones who have to make that determination because they're the ones who have to determine if it's higher priority items, especially as it relates to military functions. We agree that DOD makes that determination, but DOD could have gotten it wrong. And DOD did get it wrong in this instance, particularly... Well, the bottom line is that nobody at the District Court, no one anyplace along the line, has ever looked at that statute in that way. And that's what the DOD would have done. If we had an APA claim, they would say, somebody's got to tell us that that's the way it is. So we've got a statutory claim if we don't think you got one. Equitable claim, which we don't think you got one because of questions which Judge Friedland's given. We're now on ultra varies or constitutional. And I'm saying you skip the very claim you gave me in your briefs, which is the APA claim which would give us out of this ultra varies and constitution. We wouldn't have to go there. And we would disagree, Your Honor. What case says we'd have to go there? What case says that if I have an APA claim I can make that I can automatically jump to an ultra varies and constitutional claim? What case? Your point, Your Honor, is that if you look at the principle of constitutional avoidance... quite opposite, they say they should be the last resort. And then when you couple on that the case that the government cited, which is worrisome to me, which is why I think you probably do need some briefing, that had to do with the Dalton case, which suggests that, hey, just not doing what's supposed to be done on the statute is not something we ought to get to on ultra varies and constitutional. We ought to do that on something else. It seems to me we have not really looked at what happened here. And I'll let you respond. Thank you, Your Honor. The statutory question is both an issue of statutory interpretation, but it must be rubbed with these constitutional limitations. And that's the principle of constitutional avoidance, which we would... is one of the cases that we're looking for that. And we would say, Your Honor, that 8005 cannot be read to reject the clear judgment of Congress, which was not to provide any more funding for a border barrier than 1.375 billion dollars, only in the Rio Grande Valley, and only to the enumerated conditions that were in the Consolidated Appropriation Act. And the agency has no expertise, no deference in interpreting the Constitution. And we're happy to provide briefing about the fact that even under the APA, there is a provision within it that allows for review of unconstitutional actions. And even if this were to look under the APA, the courts would have to... We're not worried about the review. We're worried about the deference. Sure. And our position would be, and we're happy to provide briefing on that, is that for constitutional questions, there should be no deference given to the Constitution. Thank you. I think we'd better give the government 20 minutes to be fair because we've taken everyone over their time. I really appreciate it, Judge Friedland. So I have four points I wanted to try to make if I'm able to. You speak with some experience there. Yes, Your Honor. I will cut straight to 8005 because I didn't really get to talk with you all about it last time. I think, aside from the deference issues, which I'd like to get to in a moment, the key linguistic mistake the district court and the plaintiffs made is on the word item. So what the provision says is higher priority items. Now, what does item mean? Item means a line item, an item in the budget because this, again, is a statute about transferring money within the DOD budget. It's not a statute or a provision that allows transferring money anywhere in the executive branch. It allows transferring money from one DOD account to another. So it doesn't make any sense to think about this at the level of generality that the district court and the plaintiffs do. But wouldn't that read the unforeseen and denied basically out of the statute because wouldn't you just call it a different line item every time because otherwise it would be futile? I mean, I don't understand why the government would, if there had been a line item that had been denied, why it wouldn't just call it number three instead of calling it number two so that it no longer was the line item that was denied. So if that is the hypothetical we're in, I think the government still prevails because there's none of that here. So we're not talking about an argument that something in the DOD budget denied funding. But we're just one level above that, right? I mean, there was a whole, there were lots of bills to fund the wall that were denied. So, I mean, you're saying it has to be a line item, but where does that come from? It comes from the word item, Your Honor. So I think when they say item, they're talking about items in the budget. But maybe the item is the wall. Well, I understand that that's the plaintiff's position. Let's take a look at the language of the provision, 8008. I'll give you a chance to get it if you don't have it in front of you. It seems to me it breaks up into parts because you have the first part unless for higher priority items based on unforeseen military requirements and those for which originally appropriated. And then there's a second part. Yes, Your Honor. And in no case where the item, again using the word item, and I'm not sure it's the same word, for which reprogramming is requested has been denied by the Congress. Well, I read the second item to suggest the item is what are you going to do with this money? That puts the focus on what they're going to build, not the form of the request that was before the Congress before. The first use of the word items may be a little bit more like you're arguing, but I have trouble understanding how the second use of the word item doesn't focus on what you're going to do with the money as opposed to the form in which the money was requested. So I actually think it does, Your Honor, but the question of what you're going to do with the money is what program are you funding with the money? So are you funding a 284 counter drug construction project, which is what DOD is funding here? Or are you funding a DHS-led border wall building project, which is in a different budget enactment for a different agency? Why doesn't that view basically read the statute out, or the provision out of the statute altogether? Because you can always come up with a creative justification. You could say, well, we're not actually building a wall. It's an enormous screen on which we're going to project movies all along the southwestern border so people can come watch movies. And so the previous denial of money to build a wall to interdict drugs or anything else, no, no, no, no. We're not talking about that now. We're talking about building an enormous movie screen. So creativity would permit the administration to come up with some new articulation, but it doesn't change the fact that what they want to build is exactly the same thing that Congress did not fund. Right, because I think in this very precise budget statute, what they're trying to police is internal moving of money around in DOD, not cross-agency programs and things like this where one agency doesn't do something and another agency does. And I think that's why they use such precise language. And so it would be a little odd, I think, for one thing, to interpret the word item differently in the same provision. And so if we agree that item in the first usage refers to line items in the DOD budget, it's hard for me to understand why we would think the second word item means something else. Because it reads the second part out completely. Because you can always come up with a creative justification that I don't think it does. And so this provision's been around for a long time, and Congress and DOD have abided by it, and it's always worked pretty well. And what normally happens when there's a denial is DOD has requested funding for some project, the missile project at some base or something, and Congress says no. And it'll either say no as part of the appropriations bill itself, or it'll say no in the joint report that the conference committee issues when the budget's issued. Now that's not judicially enforceable, because it doesn't go through bicameralism and presentment, but I can assure you DOD abides by it. And so that is how this provision has always worked. And what they mean by denied, the item is denied, they mean that it's something that came up in the budget process and Congress said no. I have a hard time understanding this as being simply in the long tradition of how it's been done. Because it's made pretty explicit here that ordinarily it's run by the respective committees, and we know that the House committees disagreed, and the so-called gentleman's agreement has not been complied with. So how is this within a tradition that's been existing for years, when in fact there seems to be a digression from the past? I just want to be clear, the legal, the meaning of the term item as a legal matter, I think, can clearly be informed by the tradition of how the two sides have interacted. The fact that there's a political disagreement now about this particular usage of 8005 is something the political branches can and will, and are in the process of working out. I can assure you that the House of Representatives will take a different perspective on 8005 in the next budget. That's part of the urgency you've offered up to us, because the reason you're concerned about these funds lapsing is that you're pretty darn confident that Congress is not going to open this door or leave this hatch door to be opened next time. So I wouldn't put it quite like that. That doesn't really weigh in favor of saying you get away with the first time, fool me once, jingle on me. So I think what we did the first time was lawful, and I think Congress is going to change the authority next time. To make sure that you can't. Right. So how does that fit this tradition you've said been going on for years as to how things work? Basically you're saying the dog gets one bite, and this is the administration's bite, and we're going to make sure you don't get a second bite, but we should get away with the first bite. Not that we should get away with it, Judge Clifton, but that we complied with the terms of the provision. And that's because the item at issue is not any item in the government. It only makes sense if it's an item within DOD, because this money can't leave DOD. So the plaintiffs have characterized this as money that's being given to DHS. That's not true. It's money that the Army Corps of Engineers is going to spend to construct the border barrier. And that's exactly the same border barrier that Congress elected not to fund through DHS. It's not, Your Honor. So what the administration asked for was money to go to DHS to build border barriers generally, and what this is is a 284 anti-drug corridor project that DOD is undertaking. This is a subset. It's not a subset. It's a completely different program. DOD has 284 authority to engage in border barrier construction for counter-drug purposes. You could call it a wall to keep kids from running away from school. You could put it in the Department of Education. I mean, it doesn't make any sense. It's what the whole government shut down over. Well, Your Honor, respectfully, I think in law these formalities matter, and these are different government programs. They're completely different programs. They have different statutory authorities. They're different and so I think when we're talking about what this very precise budgetary provision means, it's important to look at the formalities of what's going on in the government. It's not just a free-floating inquiry, and I'll get the political question in a second, because I think if it is, there's a real question there, into everything. One other point on denial, though, even if you disagree with everything I've just said, we would submit that what Congress did is not a denial, and the reason it's not a denial is that the statute Congress enacted funding DHS has nothing to say about 284. It has nothing to say about DOD. It has nothing to say about drug corridors. It doesn't deny or address in any way the programs at issue here. All it does is appropriate $1.375 billion to border barrier construction in a specific place, and not only that, it actually has very clear denials in it of five very specific things for DHS, which is construction in five very small wildlife refuges, and that's in Section 231 of the Consolidated Appropriations Act. So even Judge Clifton, if you think I've construed item too narrowly, I think the government is still correct because there's just not a denial, and that provision, by the way, was enacted in February of 2019, so that was enacted five months after the DOD budget, and so if Congress wanted to deny this, Congress had the ability to do it as part of that act. Turning to political questions. How about unforeseen? How is this unforeseen when everyone was talking about whether there would be a wall for years? Because it was unforeseen that DOD was going to get the 284 building request that it got from DHS in the summer of 2018 when the DOD budget was proposed, and in September of 2018 when it was enacted. It might have been foreseen. Because no one had thought of this label for this request, but everyone knew that the President wanted to build this wall. No, no one had thought about, at the time, this specific budgetary request because the request hadn't come in, and so DHS hadn't sent a request over to  request if, in fact, DHS had gotten the request granted that it posed. That may well be true, although there's nothing in the request that DHS made that would have precluded it from sending 284 requests also to deal with drug trafficking at the border. And so there was no proposal in the summer of 2018 to do this. And just to be more clear about that, even if DHS had gotten everything it wanted, that everything they'd asked for for border barrier construction, they still could have made 284 requests of DOD for assistance in building border barriers and drug smuggling corridors like the ones here. And so there's just nothing in the record anywhere to suggest that this was something that was foreseen in the summer of 2018. Is there anything in this request that calls for construction that wasn't encompassed in DHS's request? So the request was at a general level, and in the request they said they would use it for the – I don't have the precise language in front of me, but for the top 10 – let's see if I can find it – essentially, like, the top 10 DHS priorities, one of which is one of these areas before the court now, one of which is not. And I apologize, I just forget which is which. So the answer to your question is – We've got lots of moving parts. It is very complicated. And I think – so I'd like to, if I could, just address the political question issue that I think Judge Smith alluded to earlier. So I think if you interpret the statute the way that we have proposed, under Zivotofsky, the test – sorry, to step back a step – the test is whether there's a lack of judicially discoverable and manageable standards. That's what Zivotofsky says. And so if you interpret the statute based on things Congress has enacted, specific budget documents, I mean, really objective things, I think you have judicially manageable standards. If you interpret it the way that the plaintiffs have proposed, where anybody can sue because the zone of interest requirements doesn't restrict the plaintiffs, and the inquiry is not into what I just described, but is into what the chief of staff was saying on the news in the summer of 2018, or what the political rhetoric was among different political leaders, and who argued what, and what the president said, and did the government shut down? I think that starts to sound an awful lot like a political question, because that is just a free-floating inquiry into what was going on in the intensely political budget process. I mean, there are – Well, isn't it just a judicial question about what denied means and what unforeseen means? Those seem like very definable words. Well, I agree, Judge Friedland, but I think they're only definable and manageable if you define them to mean foreseen within the budget process at DOD. If you define – Well, why not just foreseen within the budget process generally? That's not that much bigger, and it would make you lose, I think. Well, no, I don't think it does, Your Honor, because nobody in the summer of 2018 was talking about 284 construction. And so with the plane – Oh, they were talking about a border barrier. Well, that's right, Judge Clifton, but that's the problem, is that when you extrapolate to that level of generality, then you have a pretty free-floating inquiry into what was going on at the time, where you're looking at what people were saying on the Hill, what people were saying at the White House, et cetera. One other point on political question – I'm not even sure you need to, though. I mean, they were actually bills proposed, right? And they didn't pass. It's not like we have to just look at The New York Times. We can look at what happened in Congress. Right, but there weren't bills proposed for 284 counter-drug construction. Well, that's because you came up with a new label, but there were bills proposed to do this same thing. No, Your Honor, respectfully, that's because we're using a different program. We're using a different statute Congress enacted that DOD has used for decades to engage in border barrier construction, often with praise from Congress, in order to engage in this building here. And so what the court would have to do to go with what the plaintiffs have suggested is extrapolate this thing out to a level of generality, say this border wall and that border wall are all just one border wall, even though that's one that's being built by Customs and Border Protection in one place, and that's being built by the Defense Department to stop drug smuggling in another. And I just don't think that's the kind of free-floating analysis courts typically do. One other point on this – it was suggested earlier that there might be some sort of process injury, that because the plaintiffs have participated in the legislative process – Your Honor, I'm from Washington. I can assure you there are a lot of lobbyists who will be coming to court about everything in the budget if the court finds that being injured in the process allows standing to come in and sue about a program. And so I would discourage the court from going there, because I think that would give all kinds of people who right now can't bring claims based on the appropriations clause – or appropriations process effectively taxpayer standing to come into court. If I could just talk for a minute about the balance of the equities. So I think one of the points that the district court essentially glossed over entirely is the Supreme Court's decision in Winter v. NRDC says that in each case, quote, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested release. In that case the balance was between the Navy wanted to test sonar out in the ocean and the plaintiffs were saying that could injure marine mammals and thereby injure our interest in whale watching and the like. Here, the government's interest is in stopping drug smuggling at the first and third highest drug trafficking corridors on the international border with Mexico where hundreds of pounds of drugs are coming through every year against the plaintiff's interest, which appears to be hiking and fishing and the like on the international border with Mexico in drug smuggling corridors where there are already vehicle barriers. And so just to spell this out a little more, the construction that we want to engage in will be on a 60-foot strip of land paralleling the international border that is already, as the Enrique Declaration filed below, which I commend to the court, says is, quote, heavily disturbed, end quote, and marked by barriers. This area also, because it's a drug smuggling where there's lots of drug smuggling, already, as Mr. Enrique explained, quote, functions primarily as a law enforcement zone. So, I mean, the plaintiffs had declarations about how this was peaceful desert and they hike in it. I mean, if there was a factual dispute about their standing, then could you have requested a hearing on whether they were telling the truth? I don't understand how we're supposed to resolve this at this point. Your Honor, I'm not making a factual argument. I'm making a comparative argument. I'm also not challenging standing. What I'm saying is that even if... But it seems like what you're saying is directly contrary to what the plaintiff's declaration said about the wildlife in the desert, that one professor is studying, another one hikes there and it's very peaceful and nothing blocks his view. So it seems like you're saying, no, that's not true. No, Your Honor. I think what I'm saying is that even if there's some marginal difference in the view of the international border from wherever the professor was standing and is referring to in the declaration, that is a pretty marginal difference between vehicle barriers with drug smuggling and law enforcement and all of that, between what exists now and what we want to build. And when you compare that to the government's acute interest in stopping the massive amount of drug smuggling in these drug corridors, it's a lot like winter, where you've got plaintiffs that wanted to go whale watching as compared to the Navy's ability to test sonar and be ready for international conflict. And so I think... Is there anything that's made the drug smuggling... I mean, we started on the 9th Circuit. We know about drug smuggling. We had a lot of those cases. Anything to suggest that conditions have gotten worse? I mean, we have materials presented to us that suggest that even by DEA's account, the real problem is not between the crossings, it's at the crossings. Any indication that whatever conditions have existed in the border for the last several decades can't be allowed to persist a little longer while this gets sorted out? Well, so a couple points, Your Honor. So I think what the DEA is saying is that the drug problem is terrible everywhere. And so yes, it's true that a lot of drugs are coming through the port of entry, but a lot are also coming in through these drug smuggling corridors here. And that's addressed at some length in the DHS Request for Assistance, the Le Master Declaration, which is at ECF 146-1, and the Rapuano Declaration, which is another thing that we filed below. I mean, just to give you a sense, in fiscal year 2018, they seized over 8,000 pounds of marijuana, 78 pounds of cocaine, 102 pounds of heroin, and 1,700 pounds of methamphetamine and 6 pounds of fentanyl, which is a really deadly drug, in just the Yuma drug smuggling corridor alone. And what percentage is that of the drugs that were smuggled in? Your Honor, I don't have an answer to that, but I think we could agree that every hundred pounds of drugs that we've stopped from coming into the country is important, and that the government has an acute interest in stopping any drug smuggling, even if it doesn't stop all drug smuggling. And so I think just when you compare that to the interest in going... Maybe not even more than a small fraction of drug smuggling. Your Honor, I don't have a fraction. So we can't assume to the contrary. No, but I think what I'm suggesting is not that the entire drug war will be won by building these two border barrier projects. What I'm saying is that this drug smuggling, the drug smuggling I just referenced, will be stopped because the vehicle barriers... But if it just moves over to somewhere else, then maybe their environmental interests outweigh that little bit of extra time. I mean, without knowing how much we're talking about, how can we weigh that? We do know how much we're talking about, because I just gave you the figures, Your Honor. What we don't know is the comparative amount, and obviously it's very hard to predict, you know, what... Well, you told us what was caught there now. Yes. I don't think that speaks to what will be stopped if these barriers are built in terms of what additional might be caught, or what might be discouraged, or what isn't moved around the wall. Now, one of the problems with a limited barrier is that you can walk around the end of it. That's why there are things that go on between the border projects. So on that point, Your Honor, I think you can defer to DHS, CBP, and the Defense Department. These are the most efficacious... Well, I wouldn't say the Defense Department. They don't have expertise here. They're responding to requests from DHS, and DHS requests was turned down by Congress. So... Sorry, you're right, Judge Clifton. DOD does not have expertise in drug enforcement. What I'm saying is that the people that do drug enforcement all the time have determined that this is the best way to stop drug smuggling on the border, and that's why they've sent their... And they made that request to Congress, and Congress declined to fund it. I mean, I understand... I know the words that you've used to explain why we should disregard that, but I have a hard time if what's being offered up as the basis for the balance of equities or the reason this is such an emergency is the expertise of the agency that Congress decided not to give the money to. So, Judge Clifton, I want to be really clear. Nobody made a budget request for drug smuggling walls in these places to do what the 284 projects would do. What DHS made was... So DHS decided not to make that kind of request? They made an omnibus request for all kinds of reasons to engage in general border barrier construction. I just want to be clear. They didn't turn in the particular project we're talking about now. They turned in a bigger request that I think would subsume this. So if I could also just... Those aren't the only equities because there's two very important and emergent equities right now that I think the Court is familiar with because you've alluded to them, but I'd like to emphasize them. So that was the problem below. The problem on the stay is that if this injunction lasts until September 30th, the $424 million that was appropriated to DOD, that DOD has the authority to use for this purpose, will lapse. The appropriation will lapse and that money will disappear. But if we grant the stay, won't the case become moot also because we grant the stay and then the wall will be built or the funds will be appropriated, the wall will start being built and there's no way to undo that? Well, we'll litigate the case at any pace of which the Ninth Circuit would like. I don't think the case will become moot. I mean, I don't think anyone suggested that the wall will be built in the next two months or whatever. Well, if it won't be, then what's the emergency? I mean, it seems like you're having it both ways. No, Your Honor. The emergency is that the money will lapse if it's not obligated by September 30th. And once it's obligated and given to the contractors, it can't come back? Right, but the plaintiffs have no interest in that. The plaintiff's interest is in stopping border barrier construction. The court can obviously enjoin this from border barrier construction at any time. The court could issue an order in the middle of August while the contractors are out there with the bulldozers and what have you, and as soon as the order stops, we'll do everything we can to shut that down. I mean, that's totally within the law. But that's the worst of both worlds. Because the money spent, you don't get what you spent the money on. I'm not sure the plaintiffs are right that we can't get the money back. I actually don't know the answer to that. I do know that if it's obligated, it doesn't lapse. I don't think that's the same as saying the contractor just keeps it and gets to run to the bank without building anything. Well, you've argued that one of the problems is the penalty clauses and everything else. Much of the money will be dissipated, which is why we are trying to move as quickly as we can. And I want to come back, and this may end it, but I want to come back to the question I posed before. Is there anything that the administration thinks should call for supplemental briefing? Well, sir, your honor, I mean, we're happy to do supplemental briefing on the issues alluded to in the order. We're happy to do supplemental briefing on anything else. But we would have to ask the hundred days that we need to obligate the money on Saturday. That's the trade-off. In other contexts, it's common to ask people about supplemental briefing, and the universal answer is, yes, if I'm about to lose on that. Of course, that's not the question that's being posed. Your trade-off is time. And we recognize that we'd like to get more assistance from the parties and the MEC, but it takes time to do that. So the question I'm posing now is, are you satisfied with the state that we have in front of us, or is there something more that you think should be added? I don't think, unless we get an administrative stay that allows us to start the obligation process by the weekend or by next week, I would be able to agree to anything. That being said, if the Court, you know, if the Court grants a stay, I think we would agree. If the Court is inclined to require supplemental briefing anyway, of course we're happy to provide it, and we'll make due as best we can. But I think without a stay, I couldn't do that. There's not something else that you say, wait, hear from us on this subject. There's one more point, but I can make it right now, which is that if Judge Smith's questions about the APA carry the day, and the Court does agree, as we argued below, that this is all an APA case, that has two very important consequences. The first is deference, as Judge Smith said, and I think everyone wants to hear about this, but the zone of interest requirement. The zone of interest requirement comes back, and if I could just read one quote from Lexmark, quote, the modern zone of interest formulation originated as a limitation on the cause of action for judicial review conferred by the Administrative Procedure Act. And so if we're in the world of the APA, we're back at the zone of interest requirement, which I don't think anybody thinks the plaintiffs can actually satisfy under 8005, which is why the District Court found it doesn't apply, and for all those reasons and the other stays and those in our briefs, we ask that for the very helpful arguments. This case is submitted, at least for now, and we are adjourned for the afternoon.
judges: Clifton, N.R. Smith, Friedland